IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 21-170 |
| MOSHE PORAT | : | |

### GOVERNMENT'S OPPOSITION TO THE DEFENDANT'S
### MOTION TO STRIKE SURPLUSAGE FROM THE INDICTMENT

The United States of America, through its attorneys, Jennifer Arbittier Williams, Acting United States Attorney, and Mark B. Dubnoff and MaryTeresa Soltis, Assistant United States Attorneys, hereby opposes defendant Moshe Porat's Motion to Strike Surplusage from the Indictment, Pursuant to Fed. R. Crim. P. 7(d). *See* ECF No. 26.

### INTRODUCTION

When Porat sued Temple University and its president for defamation in 2019, he claimed that he was entitled to compensatory damages of "not less than $25,000,000." *See Porat v. Temple University*, Case No. 04754, Ct. Com. Pl. (Phila. County), Verified Complaint, at p. 28.[1] Porat justified this demand by claiming he had "raised more than $100 million" for Temple's Richard J. Fox School of Business and Managements ("Fox") during his career, "earning praise from Temple's administration for cultivating donors and supporters." Compl. ¶ 14. Porat further boasted that he oversaw the fundraising for Fox's Alter Hall and for two other state-of-the-art facilities, and that he had "more than doubled" the enrollment at Fox and its affiliate School of Sports, Tourism & Hospitality. *Id.* ¶¶ 15, 17.

---

[1] Cited excerpts of the Complaint are attached as Exhibit 1. Porat verified it "subject to the penalties of 18 Pa. C.S. § 4904."

In subsequent sworn testimony, Porat further defended his $25 million claim by stating that he had been deprived of $580,000 a year in compensation as a result of his termination as Dean.[2] Now, Porat claims that any reference in the indictment to that same compensation or the compensation that his alleged co-conspirators Isaac Gottlieb and Marjorie O'Neill earned during their alleged conspiracy to defraud Fox applicants, students, and donors out of money are "improper and wholly irrelevant" and should be stricken from the indictment. Mot. at 1. Porat is mistaken.

All of the indictment's allegations about the conspirators' compensation are relevant to show their motives for conspiring to commit fraud. The allegations about Porat's compensation are particularly relevant because they show Porat had a financial incentive to lie to Temple's president and provost and the outside investigators in 2018. Such allegations also provide context for Porat's lawsuit.

Additionally, the allegations about the disparities between Porat and O'Neill's respective salaries are relevant to highlight the power dynamic between them. The government expects the evidence to prove that the reason why O'Neill followed Porat's direction to provide false and misleading information about Fox's online MBA ("OMBA") and part-time MBA ("PMBA") programs to U.S. News was because she feared she would lose her job if she did not. Indeed, the government expects the evidence to prove that Porat was an imperious micromanager who often berated subordinates like O'Neill when they did not do precisely what he wanted them to do on matters affecting Fox's rankings. Allegations that Porat earned roughly six times as much as O'Neill highlight their imbalanced relationship.

Those allegations are not surplusage.

---

[2] Redacted portions of Porat's answers to interrogatories are attached as Exhibit 2.

## THE ALLEGATIONS

Porat's motion to strike is aimed at portions of Paragraphs 26 through 28 and all of Paragraph 107 of the Indictment. More precisely, with regard to Paragraphs 26 through 28, Porat seeks to excise the below-highlighted language:

26.     Defendant MOSHE PORAT was the Dean of Fox from approximately 1996 until approximately July 2018.  Defendant PORAT also was the Dean of Temple's School of Sports, Tourism & Hospitality Management from approximately 1998 until approximately July 2018.  **PORAT's total annual compensation from Temple was nearly $600,000 in the 2017-2018 academic year.  Since the time PORAT ceased serving as Dean, he has continued to be a tenured professor at Fox, earning approximately $316,000 a year from Temple, even though he has not taught a class or published any scholarly research since at least 2018**.

27.     Isaac Gottlieb, charged elsewhere, was a professor at Fox from approximately 2009 until approximately 2018.  Gottlieb taught courses in statistics and Excel for business applications.  **Gottlieb's total annual compensation from Temple was approximately $176,000 in the 2017-2018 academic year.**

28.     Marjorie O'Neill, charged elsewhere, was a Fox employee from approximately 2010 until approximately July 2018.  O'Neill's job title was "Manager of Finance."  **O'Neill's total annual compensation from Temple was approximately $90,000 in the 2017-2018 academic year.**

Paragraph 107 alleges: "Defendant MOSHE PORAT earned at least $2,270,920 in compensation from Temple between the summer of 2014 and the summer of 2018."

**ARGUMENT**

Porat claims that the allegations about compensation in the indictment are "wholly irrelevant" to the elements of the conspiracy and wire fraud charges that the government will have to prove at trial. Mot. at 4-5. Porat further asserts that to the extent the government "could articulate some theoretical relevance to the allegations regarding Dr. Porat's compensation, they should still be stricken because such value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Mot. at 5 (citing Fed. R. Evid. 403). Porat next cites to this Court's opinion in *United States v. Hampton*, Criminal No. 15-302, and other cases that he contends support the exclusion of evidence of his financial situation under Rule 403. Mot. at 6-7. Lastly, Porat contends that the allegations about compensation in the indictment is an "appeal to class prejudice" that would "allow the government to lure the jury into convicting Dr. Porat based on an 'emotional' or otherwise 'improper bias,' which Rule 403 bars." Mot. at 8. There are several flaws with Porat's argument, including that it conflates a motion to strike surplusage with a motion to exclude evidence and is largely premature with regard to both. His argument on surplusage also fails on the merits.

Although Fed. R. Crim. P. 7(d) authorizes courts, upon a defendant's motion, to strike surplusage from an indictment, the Third Circuit has been clear that such motions should be "rarely granted." *United States v. Hedgpeth*, 434 F.3d 609, 611 (3d Cir. 2006). A motion to strike surplusage may be granted only if the surplusage is both irrelevant and prejudicial. *Id.* at 612. *See also United States v. Ligambi*, 890 F. Supp. 2d 564, 570 (E.D. Pa. 2012) (declining motion to strike surplusage); *United States v. Rezaq*, 134 F.3d 1121, 1134 (D.C. Cir. 1998); *United States v. Schweitzer*, 2004 WL 1535793, at * 3 (E.D. Pa. Feb. 26, 2004). This is "an exacting standard, met in only rare cases." *Schweitzer*, 2004 WL 1535793, at * 3; *United States*

*v. Jordan*, 626 F.2d 928, 930 n.1 (D.C. Cir. 1980); *United States v. Eisenberg*, 773 F. Supp. 662, 700 (D.N.J. 1991).

Under this standard, language is properly included in an indictment if it pertains to matters which the government will prove at trial. *Schweitzer*, 2004 WL 1535793, at * 3; *United States v. Abuhouran*, 2002 WL 31681976, at * 6 (E.D. Pa. Nov. 26, 2002); *United States v. Bulei*, 1998 WL 544958, at * 3 (E.D. Pa. Aug. 26, 1998). These matters need not be essential elements of the offense if they are relevant to the overall scheme charged or contain relevant background information. *United States v. Yeaman*, 987 F. Supp. 373, 377 (E.D. Pa. 1997); *Bulei*, 1998 WL 544958, at * 3. Moreover, if the language "pertains to matters which the government will prove at trial," then "it cannot be considered surplusage no matter how prejudicial it may be." *Yeaman*, 987 F. Supp. at 377 (internal quotation marks, citations omitted).

In other words, Porat's principal argument for striking the compensation allegations – that the allegations do not pertain to the essential elements of his conspiracy and wire fraud charges – is a non-starter. The key question for present purposes is whether the government intends to prove the allegations about Porat and his co-conspirators' compensation from Fox during the charged conspiracy period. The answer to that question is "yes," so the allegations are not surplusage.

The government intends to prove the allegations about Porat's compensation to show that he had a motive to participate in the alleged fraud scheme: he wanted to keep earning nearly $600,000 each year. Porat's defamation complaint makes clear that he believed his success as a dean could be measured by his accomplishments in fundraising and increasing enrollment. Thus, Porat believed that the best way to keep earning $600,000 a year was to keep "earning praise from Temple's administration for cultivating donors and supporters."

Evidence of Porat's high salary also helps explain why Porat was willing to keep misleading Temple's president and provost in 2018, first by telling them only that a "clerical error" had been made in Fox's reporting to U.S. News, and that Fox's OMBA programs should still be ranked No. 1 or No. 2 (Indictment ¶ 72); then by repeating the lies after U.S. News unranked Fox's OMBA program(Indictment ¶ 110); and later by trying to discourage Temple's president and provost from hiring Jones Day to conduct an independent investigation (Indictment ¶ 111): he wanted to keep his job as dean so he could keep earning $600,000 a year. The same motive explains why Porat allegedly lied to Jones Day investigators (Indictment ¶¶ 113-14).

Meanwhile, the fact that Porat continued to receive more than $316,000 a year from Temple reinforces his financial motive for the scheme and perpetuating the lies. Furthermore, the fact that he continued to receive that income, without teaching any classes or doing any academic research, is relevant to undercut the defense's expected presentation of Porat as a man of high ethical standards who always told O'Neill to report information accurately to U.S. News.[3] One of the biggest questions the jury is likely to be asked at this trial is who to believe with regard to what transpired in July 2014 before Fox falsely reported to U.S. News that all of its incoming OMBA students had taken the GMAT: O'Neill or Porat. O'Neill is expected to testify that the only reason why she falsely informed U.S. News that all of Fox's incoming OMBA students had taken the GMAT was because Porat told her to "report it that way," or words to that effect. Porat is expected to suggest that O'Neill acted alone and that Porat always wanted her to be truthful. Evidence that Porat was motivated by his compensation such that he

---

[3] Porat of course is under no obligation to present any defense, and if he does not, and if his counsel does not intend to argue this point, this issue can be revisited later.

willingly accepted money from Temple that he did not earn is evidence relevant to the credibility issues that the jury will be called on to resolve.

Similarly, evidence that O'Neill earned only about one-sixth of Porat's annual compensation will be relevant to show the dynamic of their relationship: that Porat was in an incredibly dominant position to O'Neill. The government expects to present evidence demonstrating that O'Neill feared for she would lose her $90,000-a-year job if she did not please Porat and that she was willing to act dishonestly in order to keep her job. In other words, the allegations about O'Neill's salary are relevant to show both that she had a motive to commit fraud and that she had a motive to follow Porat's unlawful directives. Likewise, the allegations about Gottlieb's compensation at Fox are relevant to prove his motive to participate in the charged conspiracy.

To the extent Porat wants to try to exclude some of the evidence supporting these allegations under Rule 403 or some other rule of evidence, he can raise that argument at a later time. Such arguments are premature in a motion to strike surplusage. Accordingly, Porat's reliance on *Hampton* and other cases analyzing the admissibility of evidence at trial is misplaced. None of those cases is relevant to a motion to strike surplusage.

In sum, since government intends to try to prove all of these allegations about co-conspirator compensation, they are by definition not surplusage. They are also all relevant to the conspiracy and fraud charges in the indictment. Additionally, Porat will suffer no prejudice if his motion to strike surplusage is denied, especially if the motion is denied without prejudice to Porat refiling such a motion at trial if circumstances change. *See United States v. Islam*, Crim

No. 20-45, Docket No. 78, *2 (E.D. Pa. Jan. 29, 2021) (denying motion to strike surplusage without prejudice "should circumstances at trial require further consideration of the issue.").[4]

## CONCLUSION

For all the foregoing reasons, the government respectfully submits that Porat's Motion to Strike Surplusage should be denied.

Respectfully yours,

JENNIFER ARBITTIER WILLIAMS
Acting United States Attorney


*/s/ Mark B. Dubnoff*
MARK B. DUBNOFF
MARYTERESA SOLTIS
Assistant United States Attorneys

---

[4] A copy of Judge McHugh's memorandum is attached as Exhibit 3.

CERTIFICATE OF SERVICE

I hereby certify that this pleading has been served on the Filing User identified below through the Electronic Case Filing (ECF) system:

        Michael A. Schwartz, Esq.
        Richard J. Zack, Esq.
        Tiffany Nichols Bracewell, Esq.
        Troutman Pepper Hamilton Sanders LLO
        3000 Two Logan Square
        18th And Arch Streets
        Philadelphia, Pa 19103

        Jay P. Lefkowitz, Esq.
        Robert Allen, Esq.
        Kirkland & Ellis
        601 Lexington Ave
        New York, Ny 10022

        */s/ Mark B. Dubnoff*
        MARK B. DUBNOFF
        MARYTERESA SOLTIS
        Assistant United States Attorneys

Dated: July 9, 2021.