IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MOSHE PORAT | No. 21-cr-0170 |

**PAPPERT, J.**                                                                                               **August 4, 2021**

## MEMORANDUM

On April 15, 2021, a grand jury indicted Dr. Moshe Porat on one count of conspiracy to commit wire fraud and one count of wire fraud. (ECF 1.) The Indictment alleges that Porat, the former dean of Temple University's Richard J. Fox School of Business and Management, conspired to artificially inflate Fox's U.S. News ranking. (*Id.*) It further alleges that, in doing so, Porat intended to obtain money and other property from Fox applicants, students and donors. (*Id.*)

Recently, the Court denied Porat's Motions to Dismiss the Indictment, Strike Surplusage from the Indictment and Compel Disclosure of Grand Jury Instructions. (ECF 49.) Trial is set to begin November 8. (ECF 36.) Porat moves now for an order compelling the Government to produce its "reports, memoranda, notes, and/or summaries of interviews or proffers for Marjorie O'Neill, Rajan Chandran, Isaac Gottlieb, Diana Breslin-Knudsen, and any other witness/potential witness that contain information favorable" to him. (Mot. to Compel 2, ECF 38.) The Government responds that it "has fully complied with all of its disclosure obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and will continue to meet those obligations." (Gov't

1

Resp. 1, ECF 50.) And it contends Porat "is not truly seeking '*Brady* information' as much as he covets non-*Brady* information that" is more like "early" Jencks Act material. (*Id.* at 1–2.) The Government argues the Court should deny the Motion because it has already disclosed any *Brady* information in the documents Porat seeks and because it will soon provide "early Jencks" material, which will include many of the requested documents. (*Id.* at 2.) The Court agrees and denies the Motion.

I

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. The duty to disclose such evidence applies even if there has been no request by the accused, *United States v. Agurs*, 427 U.S. 97, 107 (1976), and encompasses both impeaching and exculpatory evidence. *See United States v. Friedman*, 658 F.3d 342, 357 (3d Cir.2011) (citing *United States v. Giglio*, 405 U.S. 150, 154, (1972)). The Government has an ongoing duty to disclose *Brady* material and must turn it over "in time for its effective use at trial." *United States v. Higgs*, 713 F.2d 39, 44 (1983). The Government must produce *Giglio* material—that is, evidence impacting a Government witness's credibility—no later than the day the witness testifies. *Id.*

Similarly, the Jencks Act provides that "any time that a government witness testifies on direct examination, the defendant is entitled to a copy of 'any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified.'" *United States v. Maury*, 695 F.3d 227, 247 (3d Cir. 2012) (alteration in original) (quoting 18 U.S.C. § 3500(b)(2)). The

Jencks Act "endeavors to provide a defendant the opportunity to review witness statements for impeachment evidence." *United States v. D'Ambrosio*, No. 15-cr-003, 2019 WL 3776510, at *6 (M.D. Pa. Aug. 12, 2019) (citing *Maury*, 695 F.3d at 248 (citation omitted)).  "[T]he Government has no obligation to produce Jencks material until the witness has testified," but prosecutors in this Circuit typically produce it before trial.  *Maury*, 695 F.3d at 248.

## II

Porat wants the Government to turn over its "interview and/or proffer material" for several anticipated witnesses.  (Mot. at 14.)  He claims this evidence will reveal discrepancies in the witnesses' testimony regarding his "intent, knowledge of, and/or participation in the charged scheme to defraud" and that it "likely contain[s] *Brady* material." (*Id.* at 14–15.)  The Government assures the Court that it will give Porat "early Jencks" material, including agent reports, in short order.  (Resp. at 2.)  And the Government says although it has complied with its *Brady* obligations to date, it will continue reviewing the materials Porat requests and will turn over any *Brady* material it discovers.  (*Id.* at 20–22.)

Government officers' "rough interview notes" are *Brady* material when they are favorable and material to the defense.  *United States v. Vella*, 562 F.2d 275, 276 (3d Cir. 1977).  They do not become Jencks material unless and until they are "refined to the point where a finding can be made that the witness has 'adopted or approved' the rough draft as a statement." *United States v. Johnson*, 218 F. Supp. 3d 454, 464 (W.D. Pa. 2016) (quoting *United States v. Ammar*, 714 F. 2d 238, 259 (3d Cir. 1983)).  The Government's disclosures to date—and its plan to produce early Jencks material soon—

render it compliant with *Brady* and the Jencks Act.  To the extent any additional reports, interview notes, memoranda or other materials fall within *Brady*, the Government must continue to fulfill its obligations to turn that information over to the defense.  Porat has not done enough to show that the Government has somehow shirked its duty to disclose specific favorable *Brady* material.  And in any event, the Government says it will turn over relevant reports in the coming weeks.  (Resp. at 2.)  If the Government fails to follow through on its promise to produce these materials soon and to continue evaluating its evidence for *Brady* material, Porat is free to move for their production again with a specific showing that the evidence sought likely includes *Brady* material.

An appropriate order follows.

BY THE COURT:


*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.