# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : CRIMINAL ACTION |
| v. | : NO. 2:21-CR-00170-GJP-1 |
| MOSHE PORAT, | : |
| Defendant. | : |

## DEFENDANT DR. M. MOSHE PORAT'S OBJECTIONS AND COUNTER-DESIGNATIONS TO THE GOVERNMENT'S DEPOSITION DESIGNATIONS

Pursuant to the Court's September 15, 2021 Order (Dkt. 59), Defendant Dr. M. Moshe Porat, by and through his undersigned counsel, submits his unresolved objections and counter-designations to the government's deposition designations.

**I.      BACKGROUND**

On September 1, 2021, as explained in Dr. Porat's unopposed motion to extend the time to file objections (Dkt. 56), the government provided Dr. Porat with a list of 78 excerpts from Dr. Porat's five-day video deposition in a civil lawsuit against Temple University that the government intends to offer into evidence at trial. In response, Dr. Porat provided the government with proposed counter-designations pursuant to Federal Rule of Evidence 106, as well as objections on various grounds to the government's designations.

On September 27, 2021, counsel for Dr. Porat and the government met and conferred about Dr. Porat's proposed counter-designations and objections to the government's designations. While the parties were able to reach agreement on several of Dr. Porat's proposals

and objections, the following objections and proposed counter-designations remain unresolved.[1]

For the reasons set forth below, the Court should sustain Dr. Porat's objections and admit his counter-designations to the government's deposition designations.

## II. OBJECTIONS TO GOVERNMENT DEPOSITION DESIGNATIONS

### A. Dr. Porat objects to the admission of any deposition testimony regarding his past or present financial condition pursuant to Fed. R. Evid. 401, 402, 403, and 404(b).

- **Excerpt No. 9**: Dep. Tr. 35:12-17 (June 23, 2020)

Dr. Porat objects to the government's deposition designation (reproduced in full below) for the reasons set forth in his Motion in Limine to Exclude Evidence Regarding Personal Financial Status (Dkt. 58).

```
12   had meant to ask you, what is your current
13   salary from Temple University?
14         A    Something around 316.
15         Q    316,000 you are being paid by
16   Temple University?
17         A    Yes.
```

- **Excerpt No. 10**: Dep. Tr. 37:5-21 (June 23, 2020)

Dr. Porat objects to the government's deposition designation (reproduced in full below) for the reasons set forth in his Motion in Limine to Exclude Evidence Regarding Personal

---

[1] During their meet and confer, the parties agreed that the transcripts produced in the civil litigation do not always accurately reflect the audio/video recordings of Dr. Porat's testimony. And, as the government recognizes, Dr. Porat offered certain clarifications in Errata sheets after the depositions. The parties also agreed to work together in good faith to ensure that any transcriptions of Dr. Porat's deposition testimony presented at trial will accurately reflect the words spoken in the audio/video recordings of his deposition. To the extent there are disputes over the accuracy of any words in a transcript or the proper inclusion of any clarifications, Dr. Porat reserves the right to object to the government's use of that transcript.

Financial Status (Dkt. 58).

```
 5    by the way, you also get benefits, don't
 6    you, like health benefits from the
 7    University?
 8         A    Yes.
 9         Q    And do those health benefits
10    also cover your wife?
11         A    Yes.
12         Q    Do you get any other benefits
13    from the University?
14         A    I get the normal benefits.
15         Q    Which are what?  What else?
16         A    I think it's contribution to
17    pension, some dental benefits.  And the same
18    benefits that everyone else gets.
19         Q    Everyone else that is, acting
20    as a Professor at the University, right?
21         A    Yes.
```

- **Excerpt No. 15: Dep. Tr. 87:7-15 (June 23, 2020)**

Dr. Porat objects to the government's deposition designation (reproduced in full below) for the reasons set forth in his Motion in Limine to Exclude Evidence Regarding Personal Financial Status (Dkt. 58).

```
 7         Q    Okay.  So, let's go back to,
 8    you were paid a higher salary when you were
 9    acting dean of the business school, correct?
10         A    Yes.
11         Q    I'm sorry?
12         A    Yes.  Yes.
13         Q    And what was that total salary?
14         A    Benefits and so on, was
15    somewhere close to 600,000, maybe 580-plus.
```

- **Excerpt No. 65**: Dep. Tr. 9:23-12:13 (Sept. 14, 2020)

Dr. Porat objects to the government's deposition designation (reproduced in full below) for the reasons set forth in his Motion in Limine to Exclude Evidence Regarding Personal Financial Status (Dkt. 58).

```
23   Q    When was the last time you
24   received a paycheck from Temple University,
25   and by paycheck I mean compensation?

 1        A    End of August.
 2        Q    And how much was that?
 3        A    I don't know exact number.
 4        Q    Approximately?
 5        A    Gross maybe 26.  Net maybe 16
 6   or something.
 7        Q    A gross salary of 26,000?
 8        A    Yes.
 9        Q    And a net of how much?
10        A    Maybe 16.  Sixteen, close to
11   17.  I don't recall exactly.
12        Q    And tell me all of the work
13   that you did to earn that salary.
14        A    I research on my book.  I
15   research my case.  I connect with my
16   lawyers.
17        Q    And Temple compensated you for
18   researching on your case where you are suing
19   them as well as, connecting with your
20   lawyers?
21        A    Temple compensate me for doing
22   research on my book and for continuing my
23   sabbatical and all the other things that I
24   was entitled to.
25        Q    How long of a sabbatical are
```

```
 1   you entitled to?
 2        A    I was entitled to a year
 3   sabbatical.  And I was entitled to support
 4   and research assistant and several other
 5   things that they didn't fulfill.
 6        Q    How long have you been on your
 7   sabbatical?
 8        A    A year sabbatical.  And I'm
 9   entitled to about 180 days of sick leave and
10   also sort of things of other kind.
11        Q    Are you utilizing your sick
12   leave right now?
13        A    I don't understand, what do you
14   mean utilizing?
15        Q    You said your sabbatical was
16   one year, correct?
17        A    Yes.
18        Q    When did you start your
19   sabbatical?
20        A    When they basically told me not
21   to come back to campus.
22        Q    And when would that be?
23        A    I think it happened sometime
24   around September or October.
25        Q    Of 2018?

 1        A    Yeah.
 2        Q    What would be a year from
 3   September or October of 2018?  Would that be
 4   approximately September or October of 2019?
 5        A    Yeah.
 6        Q    Since that time, one year after
 7   your one year sabbatical began, what have
 8   you done to earn any compensation from
 9   Temple University?
10        A    Continuing being a faculty
11   on -- with tenure a full professor.  Being
12   faculty and tenured that was not asked to
13   teach.
```

- **Excerpt No. 66**: Sept. 14, 2020 Dep. Tr. 37:14-38:2 (Sept. 14, 2020)

Dr. Porat objects to the government's deposition designation (reproduced in full below) for the reasons set forth in his Motion in Limine to Exclude Evidence Regarding Personal Financial Status (Dkt. 58).

```
14        Q    You testified that you're
15   getting approximately $316,000 a year at
16   Temple, plus another 20 percent with
17   benefits.  And you have been getting that
18   salary consistent since you stepped down --
19   since you were removed as dean, correct?
20        A    Yes.  But what -- if I may?
21        Q    I just want to establish,
22   that's how much you have been getting paid,
23   at least $316,000 plus --
24        A    Probably more with time.
25   Various increases.  That's my recollection

 1   the number.  But I'm not good at recalling
 2   these numbers.
```

- **Excerpt No. 67**: Dep. Tr. 40:16-18 (Sept. 14, 2020)

Dr. Porat objects to the government's deposition designation (reproduced in full below) for the reasons set forth in his Motion in Limine to Exclude Evidence Regarding Personal Financial Status (Dkt. 58).

```
16        Q    So you are being paid by temple
17   while you are suing them, correct?
18        A    Yes.
```

**B. Dr. Porat objects to the admission of deposition testimony that is not relevant, argumentative and/or unduly prejudicial pursuant to Fed. R. Evid. 401, 402, and 403.**

- **Excerpt No. 17**: Dep. Tr. 214:4-12 (June 23, 2020)

Dr. Porat objects to the government's deposition designation (reproduced in full below) because the testimony is not relevant to this case. That Dr. Porat and opposing counsel may have been momentarily frustrated with one another after more than three hours into a multi-day deposition in 2020 does not have any factual relevance to the rankings metrics and submissions associated with the alleged scheme that purportedly took place years prior. Additionally, if admitted, such testimony would unfairly prejudice Dr. Porat. To present this exchange to the jury (an exchange where no question is even pending) serves no purpose other than to influence the jury to convict on improper grounds. *See Gov't of the V.I. v. Archibald*, 987 F.2d 180, 187 (3d Cir. 1993) (noting Rule 403 protects a criminal defendant from "'guilt by reputation'") (citation omitted).

```
 4      Q     Okay.  Let me ask you a
 5  question.  It's a very simple question.
 6      A     And can I --
 7      Q     I understand you're upset, and
 8  I think we should bring this down.
 9      A     I'm not upset.  I'm just --
10      Q     You're shouting, so.
11      A     It helps everybody to listen
12  also.  But I said --
```

- **Excerpt No. 33 (partial)**: Dep. Tr. 50:12-14 (Aug. 18, 2020)

Dr. Porat objects in part to the government's deposition designation (reproduced in full below), specifically, lines 12 through 14, on the grounds that it is argumentative and unduly prejudicial. Asking Dr. Porat whether he had "ever apologize[d] to anyone" was not a proper

question and therefore should not be offered into evidence in this case. *See Tajonera v. Black Elk Energy Offshore, LLC*, No. 13-0366, 2015 U.S. Dist. LEXIS 26025, at *19-22 (E.D. La. Mar. 3, 2015) (finding counsel's request that deponent "apologize" was an "improper question"). Moreover, Dr. Porat would be unfairly prejudiced by allowing counsel's question, which is <u>not</u> evidence, *see* Third Circuit Model Criminal Jury Instruction § 3.02, to improperly suggest to the jury that, simply because it was asked, conduct warranting an apology must have occurred.

```
 8         Q    I just want to go back to one
 9   thing.  You said that you made an error in
10   approving that press release.
11         A    Error in judgment.
12         Q    An error in judgment.  Did you
13   ever apologize to anyone for that?
14         A    I don't recall.
```

- **Excerpt No. 47**: Dep. Tr. 121:12-23 (Aug. 18, 2020)

Dr. Porat objects to the government's deposition designation (reproduced in full below) on the grounds that it is argumentative and unduly prejudicial for the same reasons set forth in the objection to Excerpt No. 33 above.

```
12         Q    So regardless of when that was,
13   you say it's a mistake and you are asking
14   our forgiveness, right?
15         A    I'm not asking your
16   forgiveness.  I say I own it.  I own it.
17         Q    But when people make mistakes
18   there's consequences, right?
19         A    Yes.
20         Q    Okay.  And you did not
21   apologize for that mistake in letting this
22   go, did you, to anyone at the university?
23         A    No.
```

- **Excerpt No. 78**: Sept. 15, 2020 Dep. Tr. 163:17-165:13

Dr. Porat objects to the government's deposition designation (reproduced in full below) because the testimony is not relevant to this case.  On July 9, 2018, after spending more than 40 years at Temple, Dr. Porat was terminated as Dean of the Fox School.  Two days later, Temple's Provost and President held a meeting with the Fox School administration, staff, and faculty—a meeting that participants attended in-person and through WebEx, and that was recorded by the Fox School itself.  That Dr. Porat may have asked his long-time assistant to also record this widely-attended meeting—where organizers and attendees had been informed the meeting would be recorded—does not have any factual relevance to the rankings metrics and submissions associated with the alleged scheme in this case.  Additionally, if admitted, such testimony would unfairly prejudice Dr. Porat, and confuse and mislead the jury by suggesting that such a request is somehow evidence of misconduct, when it is not.  This deposition designation serves no purpose other than to improperly impugn Dr. Porat's character.

```
17    Q    Did you ever ask Virginia Roth
18  to record a meeting with the Provost and the
19  President?
20    A    On my initiative you mean?
21    Q    Did you ever ask Virginia Roth
22  to record a meeting with the Provost and the
23  President?
24    A    To record?
25    Q    You don't know what record
```

```
 1  you asked Miss Roth to record the meeting,
 2  correct?
 3    A    In faculty.  Administrative and
 4  faculty.  Yes.
 5    Q    You asked her to record that
 6  meeting, correct?
 7    A    It's possible.  I don't recall,
 8  truly.  But it's possible, because I was not
 9  supposed -- I was not invited to this
10  meeting, or maybe I missed it or maybe I was
11  out of town.  I don't recall.
12    Q    Anything else?
13    A    No.
```

```
 1  means?
 2       A    Recording?
 3       Q    Yes.  Tape.
 4       A    No.
 5       Q    You know, like Woodward and
 6  Trump.  Like Richard Nixon.  You know what I
 7  mean, record?
 8       A    I was not there.  But, I -- did
 9  I ask Virginia to record anything?
10       Q    Did you ask Virginia Roth to
11  record a meeting with the Provost and the
12  President, ever?
13       A    Ever, it's not.  But there is a
14  possibility that the meeting that they came
15  up to the seventh floor, and I was not
16  there, I perhaps ask her to record.  If this
17  is what you mean to refer.  Maybe that's the
18  only incident.
19       Q    And this is after the July 9th
20  announcement --
21       A    Yeah.
22       Q    Let me finish.  This is after
23  the July 9th announcement when the Provost
24  and the President came to meet with
25  administrators at the School of Business,
```

### III. COUNTER-DESIGNATIONS TO GOVERNMENT DEPOSITION DESIGNATIONS

As explained in Dr. Porat's unopposed motion to extend the time to file objections (Dkt. 56), Fed. R. Evid. 106 expresses the "rule of completeness"—"when one party has made use of a portion of a document, such that misunderstanding or distortion can be averted only through presentation of another portion, the material required for completeness is *ipso facto* relevant and therefore admissible under Rules 401 and 402." *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 172 (1988).  Pursuant to Rule 106, Dr. Porat requests that the following counter-designations to the government's deposition designations be admitted as "necessary to (1) explain the admitted portion, (2) place the admitted portion in context, (3) avoid misleading the trier of fact, or (4) insure a fair and impartial understanding."  *See United States v. Soures*, 736 F.2d 87, 91 (3d Cir.

1984).

- **Excerpt No. 36**: **Aug. 18, 2020 Dep. Tr. 57:11-16 (Counter-Designation)**

Dr. Porat requests admission of this counter-designation (identified in the black box below) to explain the admitted portion and avoid misleading the trier of fact.  At this point in the deposition, counsel asked Dr. Porat a series of questions related to a January 10, 2018 email from Marjorie O'Neill, where Ms. O'Neill explained that only 42 of the 255 new students reported GMAT scores.  In the government's designated deposition testimony, counsel asked Dr. Porat why he did not react to this email by asking Ms. O'Neill "[w]hy in the world would [she] have reported a hundred percent, when we all know that's not true?"  When Dr. Porat's response merely confirmed that he did not in fact react that way, counsel reiterated the question more clearly, "[w]hy didn't you do that?"  Yet, the government would exclude the answer Dr. Porat provided to the question that is the actual subject of this portion of the deposition, that is, Dr. Porat did not know "the entirety of the story" at that point and he was "not the person that attacks without having all the facts here."  To exclude this portion of Dr. Porat's testimony will give the jury the misleading impression that Dr. Porat was indifferent to Ms. O'Neill's January 2018 revelation.  *See United States v. Dimora*, 843 F. Supp. 2d 799, 852 (N.D. Ohio 2012) (requiring the government to play additional portions of defendants' wiretapped phone calls to, among other reasons, avoid any misimpression of the purpose behind one of the calls).

```
 4    will get to that.  My question is, at the
 5    time that you saw this e-mail, and this is
 6    an important issue to you, did you say to
 7    her, 42?  Why in the world would you have
 8    reported a hundred percent, when we all know
 9    that's not true?
10         A    No, I didn't do that.
11         Q    Why didn't you do that?
12         A    Because it was an honest
13    mistake.  We didn't do the entirety of the
14    story and she was still playing dumb.  And I
15    am not the person that attacks without
16    having all the facts here.  That's not --
```

- **Excerpt No. 40**: **August 18, 2020 Dep. Tr. 88:7-19 (Counter-Designation)**

Dr. Porat requests admission of this counter-designation (identified in the black box below) to avoid misleading the trier of fact. According to the government, the exact timing and content of Dr. Porat's communications with Temple's Provost in January 2018 are relevant to the alleged wire fraud scheme. (*See, e.g.*, Indictment ¶ 110.) As a result, it would be misleading to leave the jury with the impression that a single, definitive conversation took place between Dr. Porat and the Provost, as the government's deposition designation does, given Dr. Porat's counter-designated testimony that explained that the communications were a more fluid, multi-step process.

```
 2              Are you certain that the first
 3         time that you spoke to Provost Epps about this
 4         misreporting to U.S. News and World Report was
 5         over a telephone?
 6              A    Yes.
 7         ┌─────────────────────────────────────────────┐
           │ 7      Q    Did you ever talk to her about  │
 8         │ 8  this at any kind of a sports game?       │
           │ 9      A    Maybe in addition to, because   │
 9         │10  there were several steps that we were    │
           │11  contemplating. I wanted to make          │
10         │12  announcement in the school. I wanted to  │
           │13  make an announcement to the -- my board of│
11         │14  visitors. And she and everybody else was │
           │15  very concerned with what will be said and so│
12         │16  on. And what kind of a mode for me in my │
           │17  communications, so I had to probably clear│
13         │18  and repeat it with her and others        │
           │19  subsequently.                            │
14         └─────────────────────────────────────────────┘
15
16
17
18
19
```

- **Excerpt No. 75**: Sept. 14, 2020 Dep. Tr. 273:6-12 (Counter-Designation)

Dr. Porat requests admission of this counter-designation (identified in the black box below) to explain the admitted portion and ensure the jury has a fair and impartial understanding of this testimony. Because Dr. Porat's intent will be a central issue in this case, excluding testimony on what the government has alleged is the "continued deception" that occurred in January 2018, (*see, e.g.*, Indictment ¶¶108-18), will unnecessarily deprive the jury of the opportunity to fairly and impartially weigh Dr. Porat's full testimony on this specific topic. *See, e.g.*, *United States v. Vargas*, No. 18 Cr. 76, 2018 U.S. Dist. LEXIS 197906, at *5-6 (S.D.N.Y.

- 12 -

Nov. 21, 2018) (admitting defendant's entire statement under Rule 106 because "[i]f the jury is only permitted to hear some of the Defendant's post-arrest statements, they may assume no other statements were made, [and] [s]ince the statements the Government seeks precluded will likely form part of Defendant's defense at trial, their omission could lead the jury to conclude they are a recent fabrication, inaccurately undercutting [defendant's] credibility").

```
13    You have the conversation on the 13th where
14    you're told at best No. 6, correct?
15         A    Yes.
16         Q    You have an e-mail blast after
17    that where even though you know at best you
18    will be No. 6 you tout No. 1 e-mail blast,
19    correct?
20         A    Yes.
21         Q    Then on January 24, 2018, and
22    that is 11 days later, you send an update to
23    Provost Epps, and in this update you say;
24    "The recalculation of the rankings after
25    providing the correct number of GMAT scores

1    submitted would have resulted in us either
2    remaining No. 1, or perhaps slipping to No.
3    2."
4              Did you write that?
5         A    Yes.
6         Q    Did you believe that to be
7    true?
8         A    I believed this -- yes.  I
9    believed it true.  This was my mental
10   impression of what I heard from Isaac and
11   what I thought since they haven't given us
12   the answer that this is the case.
```

IV. CONCLUSION

For the foregoing reasons, and those set forth in his Motion to Extend the Time to Object to the Government's Deposition Designations, Dr. Porat respectfully requests that this Court sustain his objections and admit his counter-designations to the government's deposition designations.

Dated: October 4, 2021

/s/ Jay P. Lefkowitz
Jay P. Lefkowitz, P.C.
Robert W. Allen, P.C.
(admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
lefkowitz@kirkland.com

Respectfully submitted,

/s/ Michael A. Schwartz
Michael A. Schwartz (PA 60234)
Richard J. Zack (PA 77142)
Tiffany N. Bracewell (admitted *pro hac vice*)
TROUTMAN PEPPER HAMILTON
SANDERS LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103-2799
(215) 981-4494
(800) 615-2315 (fax)
Michael.Schwartz@Troutman.com

*Attorneys for Defendant Dr. M. Moshe Porat*

## CERTIFICATE OF SERVICE

I, Michael A. Schwartz, hereby certify that on October 4, 2021, I caused a true and correct copy of the foregoing Defendant Dr. M. Moshe Porat's Objections and Counter-Designations to the Government's Deposition Designations to be served via ECF and email upon the following:

>Mark Dubnoff, Esq.
>MaryTeresa Soltis, Esq.
>Assistant U.S. Attorneys
>615 Chestnut Street, Suite 1250
>Philadelphia, PA 19106
>mark.dubnoff@usdoj.gov
>mary.soltis@usdoj.gov

/s/ Michael A. Schwartz