**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MOSHE PORAT | CRIMINAL ACTION<br>NO. 21-170 |

**PAPPERT, J.**                                                                                                  November 4, 2021

**MEMORANDUM**

Defendant Moshe Porat moves to exclude all evidence concerning his financial status and the financial status of his alleged co-conspirators, arguing that such evidence is irrelevant and unfairly prejudicial. (ECF No. 58.) The Government opposes the Motion. (ECF No. 62.) It seeks to present evidence regarding the salaries Porat, Isaac Gottlieb and Marjorie O'Neill received from Temple University's Fox School of Business during the course of the alleged conspiracy. It also intends to show that Porat continued to collect a salary from Fox in the years after his termination as dean, despite not conducting research or teaching classes. After considering the parties' filings and holding oral argument, (ECF No. 85), the Court grants the Motion in part and denies it part. Porat's salaries as dean of the Fox School and as a tenured professor are relevant to his alleged motive, but O'Neill and Gottlieb's salaries are not. Nor is what Temple paid Porat after he was terminated as dean.

I

Federal Rule of Evidence 401 sets a "low threshold" for relevancy. *Forrest v. Parry*, 930 F.3d 93, 116 (3d Cir. 2019). Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence." Fed. R.

Evid. 401(a); *see also United States v. Starnes*, 583 F.3d 196, 214 (3d Cir. 2009) ("[E]vidence is irrelevant only when it[] has no tendency to prove a consequential fact.") (citation omitted) (first alteration in original).  But even relevant evidence may be excluded if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

If the proffered evidence concerns "a crime, wrong, or other act" that does not form part of the charged offense, it faces a higher bar to admissibility.  It cannot be admitted "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  Instead, the proponent of the evidence has the burden of demonstrating the evidence serves a proper non-propensity purpose.  *United States v. Caldwell*, 760 F.3d 267, 276 (3d Cir. 2014).

II

In its papers, the Government gives two reasons why the jurors should know Porat, O'Neill, and Gottlieb's salaries during the course of the alleged conspiracy.  First, it argues their salaries motivated them to participate in the alleged conspiracy.  (Gov.'s Opp'n at 2, ECF No. 62.)  Second, the disparity between their salaries makes it more likely O'Neill was acting on Porat's orders when she submitted false data to rankings publications.  (*Id.*)

While courts are often reluctant to admit evidence concerning a defendant's poverty or wealth, *see, e.g.*, *United States v. Hampton*, No. 15-302, 2017 WL 1954369, at *1 (E.D. Pa. May 10, 2017),  evidence about a defendant's income is admissible when it

2

sheds light on the defendant's motives for committing the charged offense. *United States v. Schnabel*, 939 F.2d 197, 202 (4th Cir. 1991); *United States v. Ferguson*, No. 06-137, 2007 WL 4240782, at *1 (D. Conn. Nov. 30, 2007) ("Evidence that links a defendant's financial compensation to his possible motives for participating in an alleged fraud is relevant to proving the fraud."). In *United States v. Logan*, 250 F.3d 350 (6th Cir. 2001), for example, the Sixth Circuit Court of Appeals concluded that evidence of the defendants' income was admissible because "it demonstrated what [they] stood to lose" if they did not conceal their company's financial distress. *Id.* at 369. Any risk of class prejudice that such evidence might inspire can be mitigated through limiting instructions or by eliminating unnecessary references to the defendant's wealth. *United States v. Quattrone*, 441 F.3d 153, 187 (2d Cir. 2006).

Evidence regarding Porat's salary as dean of the business school is admissible under Rules 401 and 403.[1] Porat's salary as dean was significantly higher than his salary as a tenured professor. (Indictment ¶ 26, ECF No. 1.) Porat has previously asserted that Temple University "unduly emphasized rankings." (ECF No. 62-2.) He also included a long list of rankings in his "Personal Summary" of his performance as dean. (ECF No. 62-1.) It is plausible that Porat's financial interest in remaining dean of the business school gave him a motive to fabricate the data submitted to U.S. News and World Report. Indeed, Porat conceded at oral argument that it would be

---

[1] Porat asserts that evidence regarding his salary as dean should be analyzed under Federal Rule of Evidence 404(b). But the details of Porat's salary are not a crime, wrong, or act, so Rule 404(b) does not apply. *See United States v. Mitchell*, 172 F.3d 1104, 1107 (9th Cir. 1999). Even if Rule 404(b) were applicable, evidence regarding Porat's salary as dean satisfies the four-step balancing test for admissibility under Rule 404(b). It is relevant to a non-propensity purpose at issue in the case (motive), its probative value is not substantially outweighed by the risk of unfair prejudice, and it will be accompanied by a limiting instruction if one is requested. *See Caldwell*, 760 F.3d at 276.

permissible for the jury to hear that he made approximately twice as much as dean than he did as a professor. But if the relative difference between the two salaries is probative of Porat's motivations, so too is the exact amount of money Porat "stood to lose" if Fox was not highly ranked. *Logan*, 250 F.3d at 369. This is enough to satisfy Rule 401, and the Court can address any potential bias this evidence might create through a limiting instruction, if requested.

In contrast, there is no evidence that O'Neill or Gottlieb believed their salaries could rise and fall with Fox's rankings.[2] The Government argues that O'Neill acquiesced to Porat's demands because she feared losing her job. (Gov.'s Opp'n at 3). But employees at all levels of compensation fear losing their jobs. The jury can weigh the significance of her professed motivation without knowing her exact salary. Indeed, the Government has offered no reason why her specific salary would make her more fearful of losing her job than someone making more or less than she did. Standing alone, Gottlieb and O'Neill's salaries are irrelevant and therefore inadmissible.

Nor is the difference between Porat and O'Neill's salaries sufficient reason to admit evidence about O'Neill's salary, as the Government acknowledged when it dropped the point at oral argument. The Government can establish that Porat held power in the office and that employees feared for their jobs without introducing the exact salaries of his subordinates. Indeed, the Government anticipates that several witnesses will testify to Porat's intimidating behavior in the workplace. *See* (Gov.'s Opp'n Def.'s Mot. Lim. Exclude Test. Donna Ferrari at 4–5, ECF No. 60). Evidence of

---

[2] At oral argument, the Government represented that O'Neill may not testify at trial, but that if she does, she may say she believed her annual bonus was tied to the business school's rankings. Should that be the case, the Court reserves the right to reconsider the admissibility of her compensation.

O'Neill's salary would contribute little to the jury's understanding of her motivations and would be cumulative. Even if her salary were relevant for this purpose, it would be inadmissible under Rule 403.

### III

The Government also seeks to introduce evidence that after Porat was terminated as dean, he continued to receive an income from Temple University "without teaching any classes or doing any academic research." (Gov. Opp'n at 2, ECF No. 62.) While Porat's salary as a professor before he became dean is relevant to illustrate the financial incentive he had to remain dean, evidence that he continued to receive that salary without teaching or conducting research is irrelevant and inadmissible. It has no bearing on Porat's motivation to commit the charged offenses, or on any other fact at issue. It does not even "undercut the defense's expected presentation of Porat as a man of high ethical standards," as the Government argues. (*Id.* at 4.) Accepting a salary that Temple decided to continue to pay him says nothing about whether Porat is dishonest or unethical.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.